**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

Julie S.,[1]                                              Case No. 25-cv-3124 (SGE)

                    Plaintiff,

        v.                                                **ORDER**

Frank Bisignano,
*Acting Commissioner of Social Security,*

                    Defendant.

_____


This matter is before the Court and under its jurisdiction pursuant to 42 U.S.C. § 405(g). On appeal, Plaintiff Julie S. ("Ms. S") seeks judicial review of the final decision of the Commissioner of Social Security Administration (the "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties consented to the disposition of this case by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). Both Ms. S and the Commissioner have fully briefed their positions, and this matter is now ripe for review. (Dkts. 11, 19; Dkt. 18.) For the reasons below, the Court **GRANTS in part and DENIES in part** Ms. S's request for relief (Dkt.11), and **GRANTS in part and DENIES in part** the Commissioner's request for relief (Dkt. 18).

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name, only her first name and last initial are provided.

**BACKGROUND**

Ms. S applied for DIB under Title II and SSI under Title XVI in June 2017 (R. 229-45),[2] alleging a disability onset date of December 20, 2016. (R. 239.) Ms. S's claims were initially denied on November 15, 2017, and upon reconsideration on March 22, 2018. (R. 109-10 145-56.) Ms. S then requested an ALJ review the denials. (R. 168-69.) On August 6, 2019, the ALJ held an administrative hearing. (R. 1404-39.)  The ALJ issued a decision denying Ms. S's request for disability benefits on October 30, 2019. (R. 1352-82; R. 13-35.) Ms. S promptly requested review with the Appeals Council, which denied Ms. S's request for review on June 23, 2020. (R. 1383-88.) Then Ms. S appealed the ALJ's decision to the United States District Court in the Western District of Wisconsin, and upon a joint motion, the court remanded the case back to an ALJ. (R. 1389-97.)

After remand, Plaintiff amended her disability onset date to October 23, 2017. (R. 1572.) The ALJ held a second hearing on December 16, 2021. (R. 1327-51.) The ALJ issued a decision again denying Ms. S's request for disability benefits on February 2, 2022. (R. 1276-1307.) In reaching her decision the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a).[3]

---

[2] Throughout this Order, the Court refers to the Administrative Record (Dkts. 9, 9-1, 9-2, 9-3, 9-4, 9-5) by the abbreviation "R" Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of each page of the record.

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's residual

At step one the ALJ determined that Ms. S had not engaged in substantial gainful activity since October 23, 2017, her amended disability onset date. (R. 1282.) At step two, the ALJ found that Plaintiff had the following severe impairments: alcohol abuse, type two diabetes with polyneuropathy, degenerative joint disease status post carpal tunnel release, osteoarthritis of the knee bilaterally, a history of a tear of the left medial meniscus, hypertension, alcoholic pancreatitis, obesity, generalized anxiety disorder, bipolar two disorder and panic disorder. (R. 1282.) At step three, the ALJ determined that Ms. S did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under appendix 1 to subpart P of part 404. (R. 1282.) The ALJ then made the following residual functional capacity ("RFC") determination:

> [C]laimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scaffolds and she can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can occasionally use foot controls bilaterally. The claimant can frequently handle and finger, bilaterally. The claimant must avoid extreme cold and heat, she must avoid dangerous moving machinery, unprotected heights and vibrating hand-held equipment. The claimant can perform simple, routine tasks and she can make simple work-related decisions. The claimant can work at a consistent pace throughout the workday but cannot perform production rate or pace work such as assembly line work. The claimant is limited to work with frequent interaction with supervisors and coworkers that is incidental to the work being performed but does not involve group or team-based activities. The claimant can have occasional interaction with the general public and she can respond appropriately to occasional, gradually introduced changes in a routine work setting.

---

functional capacity, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i–v).

(R. 1284-85.) After determining Ms. S's RFC, the ALJ found that Ms. S was unable to perform any of her past relevant work. (R. 1297.)

At step five, the ALJ found that other jobs existed in significant numbers in the national economy that Ms. S, given her age, education, work experience, and RFC, could perform. (R. 1297.) Relying on the testimony from the VE, the ALJ found that Ms. S could perform the job requirements of "cleaner," of which there are 193,000 jobs available nationally; "assembler," of which there are 16,000 jobs nationally; and "sorter," of which there are 105,000 jobs nationally. (R. 1298.) Because the ALJ determined that Ms. S could perform jobs that exist in significant numbers in the national economy, the ALJ found that she was not disabled. (R. 1298-99.)

Thereafter, the Appeals Council considered exceptions submitted by Ms. S but found no reason to assume jurisdiction and no basis for changing the ALJ's decision. (R. 1532-34, 1318-19.)  Thus, the ALJ's January 28, 2022 decision is the final decision of the Commissioner. (R. 1270.) Ms. S then filed this action challenging the final decision. (Dkt. 1.)

**STANDARD OF REVIEW**

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g). Under this review, the District Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a

preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The decision of the ALJ to deny benefits will not be reversed by the Court "so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

## ANALYSIS

Ms. S asserts two arguments which challenge the ALJ's RFC determination. First, she argues that the ALJ improperly drew inferences and substituted her own opinion for those of the medical experts in determining the limitations to include in the RFC. And second, she argues that the RFC is not supported by substantial evidence because the ALJ failed to account for the arthritis and degenerative changes in her knees in her RFC finding. (Dkt. 11 at 9.)

A claimant's RFC "is the most [she] can still do despite [her]limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The

5

claimant bears the burden of establishing her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The Eighth Circuit has held that "a 'claimant's [RFC] is a medical question.'" *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). But an RFC is ultimately an administrative assessment to be determined by the ALJ. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018).

"[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Rather, the RFC should be "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Noerper v. Saul*, 964 F.3d 738, 744-45 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). The Court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy*, 648 F.3d at 615. However, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the work place." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citation omitted); *see also Lauer*, 245 F.3d at 704 ("Some medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'") (citing *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000)).

### I.   Physical Impairments

### A.  Hand Impairments

The Court understands Ms. S to be arguing (1) that the ALJ improperly relied on her own inferences drawn from the medical evidence to formulate the RFC after rejecting the opinions of Dr. Giuisti, Dr. Bush, and Dr. Chan, and (2) that the ALJ should have developed the record further instead of relying on her own inferences.[4] (Dkt. 11 at 11-15; Dkt. 19 at 2-5.) The Commissioner counters that the ALJ did not rely on her own inferences but merely "relied on the conclusions of medical professionals in the Exhibits cited in the decision" and that Ms. S "has failed to identify objective medical evidence indicating that the conditions she emphasizes caused functional limitations beyond those accounted for in the RFC." (Dkt. 18 at 8-9, 12.)

Both Ms. S and the Commissioner acknowledge that an ALJ is not required to rely on a medical opinion in formulating the RFC. *Hensley*, 829 F.3d at 932; *Perks*, 687 F.3d at 1092-93. However, "[a]n [ALJ] may not draw upon [her] own inferences from medical reports." *Nevland*, 204 F.3d at 858; *see also Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020) (per curiam) ("[T]he ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his

---

[4] Ms. S includes a tangential argument that the ALJ's consistency and supportability analysis of Dr. Giusti's opinion was flawed. (Dkt. 11 at 12.) However, Ms. S does not dispute that the ALJ addressed the factors but rather focuses on an alleged lack of medical evidence on which to conduct an analysis of the factors. (*Id.*) Nor does Ms. S directly challenge whether the ALJ adequately evaluated the persuasiveness of Dr. Giusti's opinion. In fact, Ms. S does not cite a single regulation or case regarding this tangential argument. (Dkt. 11 at 11-12.) Thus, the Court focuses on Ms. S's main argument—whether the ALJ improperly relied on her own inferences.

own."); *Combs*, 878 F.3d at 646 ("The ALJ may not simply draw his own inferences about plaintiff's functional ability from medical reports.") (cleaned up).

The Court concludes that the ALJ relied on her own inferences drawn from an administrative record devoid of any evidence of how Ms. S's carpal tunnel, which the ALJ found to be a severe impairment, affected her ability to work. Dr. Giuisti's medical opinion is the only opinion which addressed Ms. S's hands after surgery, but it only addressed Ms. S's inability to lift more than eight pounds for the immediate six weeks following surgery. (R. 2026-27, 2037). The ALJ found that Dr. Giusti's opinion was not persuasive because it was "temporary in nature," did not contain an explanation in support, and because "none of the exams performed after August 2020 showed any weaknesses in her arms or hands and the claimant did not report any issues handling or lifting items after her surgeries in August and September 2020." (R. 1294 (citing R. 1946, 1989-90, 2412, 2416, 2467-68, 2477).[5]) However, the ALJ's conclusion on this point is misleading because in June 2021 Ms. S was examined by Dr. Khan for pain in both hands and was given an injection in one finger, which the ALJ acknowledged. (R. 1290, 2476-78.) And during the hearing on December 16, 2021, Ms. S complained that one of her hands had been giving her "great trouble." (R. 1338.)

---

[5] The Court notes that with the exception of Dr. Khan's examination of Ms. S (R. 2476-79), the portions of the record cited by the ALJ are medical examinations unrelated to evaluating her hands. For example, examinations took place to evaluate injuries sustained from a fall and her visit to the emergency department, (R. 1946, 1988-90), evaluate her diabetes and anxiety (R. 2411-16), and to evaluate a cough and tooth infection (R. 2466-68).

Regardless, the ALJ's reliance on the fact that no exams assessed hand weakness after surgery is precisely the problem—there is no medical evidence such as a consultative examination or medical opinion that assesses how Ms. S's hand impairments affect her ability to work. Indeed, the ALJ acknowledged that medical records received *after* the state agency medical consultant opinions warranted a more restrictive RFC limitation of light work instead of medium work, in part because of her bilateral carpal tunnel syndrome. (R. 1295.) In other words, the consultant opinions from Dr. Bush and Dr. Chan did not evaluate any evidence of Ms. S's hand weakness or provide an opinion on the same, because the records regarding her hand surgeries were submitted after their opinions were drafted.[6]

The Commissioner encourages the Court to rely on *Hannah L. v. O'Malley*, No. 22-CV-3102 (ECT/LIB), 2024 WL 407352 (D. Minn. Jan. 17, 2024), *R&R adopted*, 2024 WL 406687 (D. Minn. Feb. 2, 2024). (Dkt. 18 at 8.) In *Hannah L.* the ALJ evaluated consultant opinions and found them persuasive but ultimately adopted more restrictions than the consultants recommended. *Hannah L.*, 2024 WL 407352, at * 6-7. *Hannah L.* is distinguishable from the circumstances in this case. Here, as discussed above, the consultants provided no opinion on Ms. S's ability to handle or finger frequently, and the ALJ relied on the absence of exams to develop the hand limitations in the RFC. Moreover, the Commissioner's argument that the ALJ relied on the conclusions of medical professionals by relying on exhibits cited in the decision is unpersuasive and supported

---

[6] Dr. Bush provided her opinion in 2017 (R 77-108), and Dr. Chan in 2018 (R. 111-144), while the medical records cited by the ALJ were created long after the opinions (R. 1577-2530).

only by a vague citation to fifteen pages of the ALJ's decision without a specific example. (Dkt. 18 at 8-9); *see Dianna L. B. v. Saul*, No. 19-CV-2561 (TNL), 2020 WL 4586822, at * 5 (D. Minn. Aug. 10, 2020) (explaining that general references to examinations are insufficient to meet the Commissioner's duty to "develop the record to permit meaningful review on appeal.")[7]

In sum, after rejecting Dr. Giusti's opinion, the ALJ was left only with medical reports and exam findings, or the absence of the same, from which to determine Ms. S's hand limitations included in the RFC. *See Jennifer A. D. v. O'Malley*, No. 23-cv-0768 (JRT/JFD), 2024 WL 3446369, at * 6-8 (D. Minn. June 25, 2024) (recommending reversal based on ALJ's formulations of RFC based on his own inferences from medical evidence), *R&R adopted*, 2024 WL 3443882 (D. Minn. July 17, 2024); *Baker v. Saul*, No. 4:18-cv-1535 (PLC), 2020 WL 870983, at *7 (E.D. Mo. Feb. 21, 2020) ("On the administrative record in this case, the only way the ALJ could have determined that Plaintiff was able to sit for six hours per day was to 'draw [her] own inferences from medical reports,' which an ALJ may not do under the Social Security Act"); *Karin R. v.*

---

[7] To the extent that the Commissioner, later in the brief, provides specific examples, those examples are unavailing. Reports that Ms. S was "doing well" and that "tingling had resolved" following surgery does not provide specific insight into her ability to use her hands. (Dkt. 18 at 10 (citing R. 1988, 1995).) Moreover, the Court agrees with Ms. S that there is a conflict between the Commissioner's reliance on the portion of Dr. Khan's examination that she had good range of motion in her wrists, elbows, and shoulders, and the portion of his examination observing degenerative changes in her hands with triggering in her right middle finger and early Dupuytren's contractures. (R. 2477.) To the extent that the ALJ found that range of motion in her wrists meant that she could frequently handle and finger, despite the documented problems with her hands and fingers, the ALJ did not explain this conclusion.

*Saul*, No. 20-CV-1994 (TNL), 2022 WL 980342, at * 20  (D. Minn. Mar. 31, 2022) ("[I]t is not clear what relevance these findings have to the degree of functional impairment has in [plaintiff's] right hand without exercising medical judgment."); *Jennifer A. Berryhill*, No. 18-cv-459 (BRT), 2019 WL 569830, at *11 (D. Minn. Feb. 12, 2019) ("There was no way for the ALJ to know whether 'normal movement' and 'no acute distress' was more consistent with a ten-pound weight restriction than a twenty-pound weight restriction based on those notes without exercising medical judgment."). Consequently, the Court concludes that the ALJ's finding that Ms. S can "frequently handle and finger" was improperly derived from her own inferences from medical reports.

The Court also concludes that the ALJ failed to fulfill her obligation to fully and fairly develop the record.  "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). "When the record lacks medical evidence of functionality, the ALJ should seek an opinion from the claimant's treating physician or order a consultive examination that assesses the claimant's RFC." *Jennifer A. D.,* 2024 WL 3446369, at *6 (quoting *Nevland*, 204 F.3d at 858). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on [her] ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Comm'r Soc. Sec. Admin.*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (quoting *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

Here, by relying on the *lack* of medical evidence of Ms. S's hand functionality to determine her RFC, the ALJ failed to develop the record as required. *See Combs*, 878 F.3d at 647 ("By relying on his own interpretation of what 'no acute distress' and 'normal movement of all extremities' meant in terms of Combs' RFC, the ALJ failed to satisfy his duty to fully and fairly develop the record.") (citation omitted); *Byes v. Astrue*, 687 F.3d at 915-16 ("Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work.").

The Commissioner contends that if the Court finds the ALJ erred by failing to develop the record, Ms. S has not shown that any error was harmful. (Dkt. 18 at 19.) Ms. S argues that the ALJ's error was not harmless (Dkt. 11 at 16) and the failure to develop the record prejudiced her because it resulted in the ALJ formulating an RFC that lacked any basis for finding she could handle and finger frequently. (Dkt. 19 at 5.)  The Court agrees. *See Holdeman v. Kijakazi*, No. 20-CV-729 (NKL), 2021 WL 6062368, at * 13 (W.D. Mo. Dec. 22, 2021) (finding ALJ's failure to develop record prejudiced plaintiff "because if the record were more fully developed the ALJ could be required to add additional limitations into the RFC");  *F. v. O'Malley*, No. 23-CV-3787 (LMP/LIB), 2025 WL 308085, at * 11 (D. Minn. Jan. 7, 2025) (explaining that where "an entirely new severe impairment arose after the state agency consultant's opinion, and the ALJ discounted the only medical opinion in the record regarding the new severe impairment" a conflict is created between legal tenants that an ALJ may not rely on own inferences and the ALJs responsibility to develop the record), *R&R adopted sub nom. F. v. King*, 2025 WL 307420 (D. Minn. Jan. 27, 2025).

In sum, there is no medical evidence for the RFC finding that Plaintiff could "frequently handle and finger, bilaterally." The Court concludes that the ALJ erred by inferring Ms. S's hand limitations and by not developing the record.[8] Consequently, the Court recommends that the Commissioner's decision be reversed, and the case remanded to the SSA with instructions for the ALJ to obtain medical evidence about how Ms. S's hand impairments affected her functioning during the relevant time period.[9]

### B. Osteoarthritis of the Knee Bilaterally

Ms. S argues that the ALJ's RFC is not supported by substantial evidence because it failed to account for "all functional limitations" caused by osteoarthritis in her knees. (Dkt. 11 at 19-20.)[10] Specifically, Ms. S argues that the ALJ failed to consider her "significant pain and inability to ambulate" caused by her knees. (Dkt. 11 at 20.) The

---

[8] Ms. S also raised an additional argument that the ALJ failed to account for her trigger finger in the RFC. (Dkt. 11 at 16.) Because the Court remands for reconsideration of Ms. S's hand impairments, the Court need not address this argument but simply notes that the ALJ should consider both issues on remand. *See Dianna L. B. v. Saul*, No. 19-CV-2561 (TNL), 2020 WL 4586822, at *6 n.1 (D. Minn. Aug. 10, 2020).

[9] Ms. S asks for either "a reversal and award of benefits and/or remand." (Dkt. 11 at 22.) The Commissioner argues that the proper remedy is remand. (Dkt. 18 at 19.) The Court agrees with the Commissioner. A court can reverse and award benefits immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Apr. H. v. Colvin*, No. 23-CV-3350 (LMP/LIB), 2025 WL 375429, at * 9 (D. Minn. Jan. 14, 2025), *R&R adopted sub nom. Apr. H. v. King*, 2025 WL 375139 (D. Minn. Feb. 3, 2025). Ms. S provides no argument as to why the Court should award of benefits instead of remand. (*See id.*; Dkt. 19.) Because the record needs development, the Court remands the case for further administrative proceedings.

[10] Notably, Ms. S does not argue that the ALJ failed to develop the record or relied on her own inferences. (*See* Dkts. 11, 19.)

Commissioner counters that the RFC sufficiently accounts for Ms. S's knee conditions. (Dkt. 18 at 9-10.)

The Court finds Ms. S's argument unpersuasive. First, Ms. S gives a general summary of the medical records regarding her knees, including the surgery on her left knee, and arthritic changes in both knees. (Dkt. 11 at 20-21.) The record she cites regarding inability to ambulate occurred before her knee surgeries. (Dkt. 11 at 20 (citing R. 813).) And the records she cites regarding the arthritic changes to her knees, crepitus in her knees, and the injections received in August 2021 were considered by ALJ. (R. 1288, 1290 (citing R. 2477).)[11] In sum, Ms. S accuses the ALJ of "ignoring equally or more significant contrary evidence from the *same* records" but essentially Ms. S asks the Court to reweigh the evidence that the ALJ already considered, which the Court cannot do. (Dkt. 19 at 6 (emphasis added)); *Cropper*, 136 F.4th at 814.

Second, the only additional functional limitations she suggests—time off task and absenteeism—are based on the need for future medical intervention for her right knee. (Dkt. 11 at 21; Dkt. 19 at 6.) Ms. S claims that her pain and resulting need for medication

---

[11] Ms. S also faults the ALJ for not mentioning that a doctor stated that Ms. S may, at some unknown time in the future, need work on her right knee similar to her left knee. (Dkt. 11 at 20 (citing R. 1679).) Ms. S. states that the ALJ did not evaluate this evidence "because the ALJ did not give a reason as to why this evidence was or was not persuasive." (Dkt. 11 at 20.) Ms. S's argument is unconvincing. First, in so far as Ms. S is alluding, without legal support, that the ALJ should have done a persuasiveness analysis under the regulations, it is unclear whether the examination even constitutes a medical opinion as defined under 20 C.F.R. §§ 404.1520c(a), 416.920c(a), that would require a persuasiveness analysis under 20 C.F.R. §§ 404.1520c, 416.920(c). Second, while it is true the ALJ did not specifically cite the record stating the possibility that she would need future work on her right knee, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

14

as well as medical intervention will require time off task and absenteeism, but she assumes this, without pointing to information substantiating "the degree of absenteeism from employment resulting from such appointments." *Folakemi A. O. v. Kijakazi*, No. 21CV02698 (JRT/DJF), 2022 WL 18399663, at * 11 (D. Minn. Dec. 28, 2022), *R&R adopted*, 2023 WL 349831 (D. Minn. Jan. 20, 2023). Even assuming that her future medical appointments will result in an unspecified degree of absenteeism, especially if at some point she does require surgery on her right knee, the record evidence does not demonstrate that any absenteeism would preclude her from employment. *See id.* ("While Plaintiff's medical appointments would be expected to result in some degree of absenteeism— especially if Plaintiff begins iron chelation treatment—the record does not currently contain uncontroverted evidence that absenteeism would likely preclude Plaintiff from competitive employment."); *Bakke v. Colvin*, No. 13-cv-1572 (JJG), 2014 WL 13139312, at * 10 (D. Minn. Aug. 4, 2014) (explaining that because plaintiff's "past hospitalization and recovery periods did not indicate [plaintiff's] present or future ability to work, the ALJ did not err by omitting absenteeism from the RFC."). Nor can an ALJ "speculate on the outcome of a future surgery and the anticipated functional limitations that would result from that surgery when fashioning a plaintiff's RFC." *Lori M. S. v. O'Malley*, No. 23-CV-1771 (DLM), 2024 WL 3949333, at * 4 (D. Minn. Aug. 27, 2024) (collecting cases).

Consequently, the Court concludes that Ms. S has not met her burden to prove these limitations, no limitations were required beyond those included in the RFC, and the knee limitations the ALJ did include in the RFC are supported by substantial evidence.

## II.     Mental Impairments.

Ms. S's final arguments relate to her mental impairments and the RFC. The Court understands Ms. S to be arguing that (1) the ALJ erred by rejecting Dr. Weber's opinion and relying on her own inferences, and (2) the ALJ erred by not accounting for her inability to interact with others in the RFC. (Dkt. 11 at 16-18.)[12] The Commissioner counters that the ALJ's evaluation of Dr. Weber's opinion was supported by substantial evidence, and that Ms. S asks the Court to reweigh the evidence. (Dkt. 18 at 13, 16-17.) The Court agrees with the Commissioner.

In support of her first argument Ms. S asserts that by not "accepting the conclusions reached by Dr. Weber, the ALJ interpreted raw medical data and formed her own medical opinion." (Dkt. 11 at 17.) As discussed above, an ALJ is not required to adopt a specific medical opinion's conclusion, and refusing to do so does not automatically mean that the ALJ interpreted data. *Hensley*, 829 F.3d at 932; *Perks*, 687 F.3d at 1092-93.  Ms. S does

---

[12] Ms. S acknowledges that the ALJ complied with the remand order and considered Dr. Weber's opinion. (Dkt. 11 at 16.) Ms. S does not otherwise allege or argue that the ALJ failed to properly analyze the opinions of Dr. Weber, Dr. Cools, or Dr. Menken. (See Dkt. 11 at 16-18.) To the extent that Ms. S, for the first time in her reply, makes a conclusory assertion that the ALJ's persuasiveness finding of Dr. Weber's opinion did not adequately articulate the supportability or consistency factors, the Court need not address it. *See Black v. Indep. Sch. Dist. No. 316*, 476 F. Supp. 2d 1115, 1121 n.6 (D. Minn. 2007) (declining to consider an argument raised for the first time in the defendant's summary judgment reply brief); *United States v. Jeanpierre*, No. 07-cr-439 (JNE/SRN), 2012 WL 4898182, at *2 (D. Minn. Oct. 16, 2012) ("Because [Petitioner] first raised this argument in his reply brief, the Court need not address it.") (citing *Smith v. United States,* 256 Fed. App'x 850, 852 (8th Cir.2007) ("[T]he district court did not err in dismissing claims raised for the first time in a § 2255 reply brief.").

not provide a single legal citation supporting this assertion. (*See* Dkt. 11 at 16-18.) Rather, what Ms. S alleges as the ALJ interpreting "raw medical data," instead appears to be a disagreement on what evidence Ms. S believes the ALJ should have relied more heavily on. (*Id.*) For example, Ms. S takes issue with the ALJ's reliance on evidence that Ms. S was able to communicate effectively with her treatment providers. (Dkt. 11 at 17.) However, implicit in Ms. S's argument is her acknowledgment that she *did* communicate effectively with her treatment providers. (*Id.*)

Second, Ms. S's argument regarding the ALJ's rejection of Dr. Weber's opinion that she had a marked limitation in her ability to adapt and manage and a marked limitation in her ability to interact with others ignores that the ALJ determined, at step two, that Ms. S had only a moderate limitation in interacting with others and a moderate limitation in adapting or managing oneself. (R. 1283-84.)[13] An ALJ must include the "limitations found at step two into the RFC or provide an explanation why they were not included when discussing the RFC." *Sept. L. v. Bisignano*, No. 25-CV-00331 (LMP/ECW), 2026 WL 500755 (D. Minn. Jan. 29, 2026), *R&R adopted*, 2026 WL 498787 (D. Minn. Feb. 23, 2026) (collecting cases). Ms. S does not challenge the ALJ's step two findings. Nor does Ms. S provide legal support for an argument that the ALJ should have included "marked

---

[13] An ALJ must rate the degree of a claimant's impairment in each functional area based on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). A "marked limitation" means a seriously limited ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00 (F)(2)(d). A "moderate limitation" means an ability to function "independently, appropriately, effectively, and on a sustained basis is fair." *Id*. § 12.00(F)(2)(b).

limitations" where the ALJ found at step two that Ms. S had "moderate limitations." (Dkt. 19 at 4-5.) Moreover, in formulating the RFC, the ALJ carefully evaluated records that Ms. S communicated fine with medical providers despite her anxiety, that she gets along with her family, friends, boyfriend, and neighbors, and that she shops in stores. (R. 1295-96.) And despite Ms. S's argument that the ALJ omitted an "interacting with others" limitation in the RFC, the ALJ did explain that she accounted for her anxiety from interacting around others by restricting her to only occasional interaction with the public and work not performed in groups or team settings. (R. 1297.) The ALJ concluded, based on a thorough review of the evidence, that a more restrictive RFC was not required, and the Court concludes that substantial evidence supports the RFC.

## ORDER

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Ms. S's request for relief (Dkt. 11) is **GRANTED in part and DENIED in part**, as set forth above;

2. The Commissioner's request for relief (Dkt. 18) is **GRANTED in part and DENIED** in part;

3. This matter is remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 2, 2026

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge
